UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RENE M. PLESIA, | ) CASE NO.  5:12CV1371 |
| | ) |
| Plaintiff, | ) MAGISTRATE JUDGE |
| | ) GEORGE J. LIMBERT |
| v. | ) |
| | ) MEMORANDUM AND OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Rene Plesia Disability Insurance Benefits (DIB).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her April 5, 2011 decision in finding that Plaintiff was not disabled because Plaintiff has the residual functional capacity (RFC) to perform light work (Tr 20-29).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

I.  PROCEDURAL HISTORY

Plaintiff, Rene Plesia, filed her application for DIB on March 2, 2009, alleging she became disabled on June 30, 2007 (Tr. 83-84), but amended her onset date at the hearing to January 3, 2008 (Tr. 34, 36).  Plaintiff's application was denied initially and on reconsideration (Tr. 69-71, 73-74, 75-77).  Plaintiff requested a hearing before an ALJ, and,

on March 29, 2011, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, along with Thomas Nimberger, a vocational expert (VE) (Tr. 30-65).

On April 5, 2011, the ALJ issued her decision, finding Plaintiff not to be disabled. Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

II.     STATEMENT OF FACTS

Plaintiff was born on May 22, 1965, which made her forty-two years old at her alleged onset date of January 31, 2008 (Tr. 35-36). Plaintiff graduated from high school (Tr. 47). However, Plaintiff has no past relevant work experience (Tr. 24).

III.    SUMMARY OF MEDICAL EVIDENCE

In June 2007, Plaintiff visited Mercy Medical Center and reported doing "very well" since her last follow-up appointment six months earlier, stating that she had "no other complaints" (Tr. 282). She was noted to be eating a lot of bananas and was advised to stop eating bananas and tomatoes due to high potassium levels (Tr. 282). She was also instructed to continue her medication for Type 2 diabetes (Tr. 282). Two weeks later, Plaintiff reported having no symptoms, despite being diagnosed with acute renal insufficiency and uncontrolled hypertension, and she was instructed to increase her medication (Tr. 279).

Three weeks later, at a follow-up appointment in July 2007, Plaintiff denied symptoms, and stated that she felt "pretty good" (Tr. 276). Her uncontrolled hypertension was noted to

2

be "totally asymptomatic" (Tr. 277). Plaintiff was not checking her blood sugar levels daily and was advised about stricter sugar and blood pressure control (Tr. 277).

In September 2007, Plaintiff demonstrated elevated creatinine levels but was "otherwise in excellent health" (Tr. 184). She reported smoking up to one pack of cigarettes per day (Tr. 184). Plaintiff was diagnosed with Stage IV chronic kidney disease, and nephrologist Pramod Bhargava, M.D. instructed her to monitor her blood pressure at home, as well as make lifestyle modifications, including smoking cessation, restricting dietary salt and fat intake, exercise, and weight reduction (Tr. 187). Plaintiff was counseled again on these risk factors in October 2007 (Tr. 275).

On October 31, 2007, Dr. Bhargava noted that Plaintiff was overall doing well with no specific complaints (Tr. 182). Dr. Bhargava noted that she continued to smoke, despite instructions to the contrary (Tr. 182-83). Dr. Bhargava instructed Plaintiff to continue her medication, meet with a dietitian, and follow a low potassium diet (Tr. 182).

At a January 31, 2008 visit to the emergency room, Plaintiff reported chest pain for approximately one week, was observed to have one hundred percent occlusion of the right coronary artery, received a stent, and, subsequently, reported that she was pain free (Tr. 21-22, 157). Upon discharge, Plaintiff was instructed to follow a low-fat/low-cholesterol diet, stop smoking, and continue her insulin regimen (Tr. 196). Shortly thereafter, Plaintiff stated she felt much better than she had in years (Tr. 272).

On February 13, 2008, Dr. Bhargava instructed Plaintiff to monitor her blood pressure at home, continue a low-salt diet, and exercise in an effort to lose weight (Tr. 158). He also

provided information on a low-potassium diet (Tr. 158).

In May 2008, Plaintiff consulted with cardiologist Makilzhan Shanmugarn, M.D., and reported that she had no significant cardiac symptoms, and was advised to continue to follow up at the Mercy Medical Center and to modify her diet (Tr. 175-77).

In July 2008, Plaintiff was evaluated in the emergency room but showed no cardiac impairment (Tr. 154, 192-93). She reported stress due to a situation involving her son, and admitted to eating bananas, even though she was supposed to be on a low-potassium diet (Tr. 154). She was advised to control her diet (Tr. 154).

In August 2008, Plaintiff was noted to be non-compliant in keeping appointments (Tr. 152). Despite this, she "feels that she is doing great" (Tr. 152). She was also noted to be non-compliant with checking blood sugar and obtaining a fasting lipid profile (Tr. 152). Plaintiff was advised to check her blood sugar daily and bring a log for evaluation (Tr. 152). She was also advised to follow up with Dr. Bhargava concerning her renal functioning (Tr. 153).

At a regular checkup in November 2008, Plaintiff was noted to be "in good health and feeling very good" (Tr. 150). Although she was monitoring her blood sugar, she was "very non-compliant with her diet" (Tr. 150). Her medications were adjusted, and she was instructed to continue monitoring her blood sugar and was given a dietitian referral for better management of her diet for diabetes and hyperlipidemia (Tr. 150).

In March 2009, Plaintiff was again non-compliant with checking her blood sugar and keeping a log (Tr. 264). She stated that she did not really watch what she ate (Tr. 264). Her

diabetes was noted to be uncontrolled, and she was strongly advised to monitor her blood sugar regularly, watch her diet, and lose some weight (Tr. 264). She was given another referral to a dietitian because she did not keep the last appointment (Tr. 264). Plaintiff's hypertension was well-controlled and her cardiac condition was stable (Tr. 264). She was instructed to follow a diet and exercise regimen (Tr. 264).

State agency physician Ronald Cantor, M.D. reviewed the medical evidence and opined that Plaintiff retained the ability to perform a reduced range of light work with some postural limitations (Tr. 164-71). State agency physician Elizabeth Das, M.D. affirmed this opinion (Tr. 172).

In June 2009, at a regular checkup, Plaintiff reported doing "fairly okay" with "no complaints" and was noted to have a stable cardiac condition, though her kidney disease was progressing (Tr. 262). She stated that she had not been consistent in managing her diet or exercising due to a family illness (Tr. 262). Plaintiff reported taking her insulin, but failed to bring her blood sugar level log (Tr. 262). She was instructed to increase her medication and follow up with Dr. Bhargava (Tr. 262).

In August 2009, Plaintiff visited Dr. Bhargava, who found that her kidney disease had worsened although she was asymptomatic, reviewed the magnitude of Plaintiff's kidney disease with her, and recommended lifestyle modifications, including smoking cessation, dietary changes, regular exercise, and weight reduction (Tr. 180-81).

In December 2009, Plaintiff reported difficulty sleeping (Tr. 258). Her consistent non-compliance with diet and exercise, her failure to bring in her blood sugar level results,

and her appointment cancellations with the Mercy Clinic and Dr. Bhargava were discussed (Tr. 258-60). She admitted that she was still smoking, and she was advised to bring in her blood sugar logs (Tr. 259-60).

In April 2010, Plaintiff was again noted as having cancelled appointments since December 2009 (Tr. 255). Her sole complaint was trouble sleeping, and she noted some stressors at home with her family situation (Tr. 255). She was noted to have not followed up in terms of monitoring her blood sugars or getting blood work done (Tr. 255).

In July 2010, Plaintiff complained of a nosebleed, and was again told not to smoke (Tr. 190).

In August 2010, Plaintiff again reported trouble sleeping (Tr. 249). She was noted to not be following proper sleep hygiene, and she admitted that when she followed proper hygiene, she slept well (Tr. 249). She also reported smoking one to two packs of cigarettes per day (Tr. 250). Plaintiff further admitted that she had not been following a proper low-fat diet, but that she would try it for the next three months (Tr. 251). She was assessed to likely be in Stage V chronic kidney disease, although her cardiac condition was stable and she had no shortness of breath or chest pain (Tr. 249-51). Plaintiff was given additional instructions on sleep hygiene, and her medications were adjusted (Tr. 251).

In March 2011, Plaintiff reported no active symptoms, but stated that she "forgot" to do her blood work since her last visit seven months earlier (Tr. 287). The importance of following a low-salt/DASH diet and exercising were emphasized (Tr. 287).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified that her glocuse meter gave her problems and that she cannot afford the strips to check her blood sugar levels (Tr. 42). Plaintiff also testified that she was compliant with taking her insulin medication as prescribed (Tr. 42-43). The Plaintiff stated that in the morning, when she awakes, her sugars are either low or high (Tr. 45).

Plaintiff testified that her housework is done in small intervals because of fatigue, shortness of breath, and tightening of her chest (Tr. 46). She stated that she does housework in ten minute intervals (Tr. 47). Plaintiff then needs five to ten minutes to recoup, and she is not one hundred percent during this time of recuperation (Tr. 47). Plaintiff also testified that she does dishes and cooks (Tr. 46 and 49), but she stated that her husband does a majority of the housework (Tr. 48-49). She also indicated she goes grocery shopping with her husband once a month (Tr. 50). After one half hour of grocery shopping, Plaintiff stated that she is exhausted and goes home to lie down (Tr. 50). Plaintiff testified that she routinely takes an hour nap each day (Tr. 51), and that she does not sleep well through the night (Tr. 51). Plaintiff also testified that her legs swell after returning from the grocery store (Tr. 51). Plaintiff stated that she can only stand for ten minutes at a time (Tr. 53). She smokes less than one-half pack of cigarettes per day (Tr. 58). Plaintiff indicated that her kidneys were not a problem when she performed her work as data entry (Tr. 55). Her current problems with her kidneys now, however, would interfere with her focus at a job (Tr. 55).

Plaintiff also revealed that she had not worked full-time since right after high school (Tr. 36-40). Finally, she also admitted that she ate things she should not, and that she

7

continued to smoke (Tr. 42, 57-58).

V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled: must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step

Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience, and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.    STANDARD OF REVIEW.

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *See, Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997).  Substantiality is based upon the record taken as a whole.  *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

9

VII.  ANALYSIS.

Plaintiff asserts only one issue:

Whether substantial evidence supports the ALJ's conclusion that Plaintiff could perform a reduced range of light work and is not entitled to a finding of disability.

In determining that Plaintiff retained the ability to perform light work, the ALJ reviewed the following evidence:

- At a January 31, 2008 visit to the emergency room, Plaintiff reported chest pain for approximately one week, was observed to have one hundred percent occlusion of the right coronary artery, received a stent, and, subsequently, reported that she was pain free (Tr. 21-22, 157);

- In May 2008, Plaintiff consulted with Dr. Shanmugarn, reported that she had no significant cardiac symptoms, and was advised to continue following up at the Mercy Medical Center and to modify her diet (Tr. 22, 175-77);

- In August 2008, Plaintiff's hypertension was noted to be well controlled (Tr. 22, 152-53);

- In March 2009, Plaintiff's hypertension was well controlled and her cardiac condition was stable (Tr. 22, 264);

- In June 2009, at a regular checkup, Plaintiff reported doing "fairly okay" with "no complaints," and was noted to have a stable cardiac condition, though her kidney disease was progressing (Tr. 22, 262);

- In August 2009, Plaintiff visited Dr. Bhargava, who found that her kidney disease had worsened, although she was asymptomatic, and reviewed the magnitude of Plaintiff's kidney disease with her and recommended lifestyle modifications, including smoking cessation, dietary changes, regular exercise,

        and weight reduction (Tr. 22, 180-81);

- In December 2009, Plaintiff reported only difficulty sleeping, and she was extensively advised concerning her consistent non-compliance with diet and exercise, her ongoing failure to bring in her blood sugar level results, and her appointment cancellations with the Mercy Clinic and Dr. Bhargava (Tr. 22, 258-60);

- In April 2010, Plaintiff again reported difficulty sleeping, but it was noted again that Plaintiff had cancelled multiple appointments, and not followed up in monitoring her blood sugar levels, and had not had blood work done (Tr. 22, 255-56);

- In August 2010, Plaintiff was assessed to likely be in Stage V chronic kidney disease, although her cardiac condition was stable and she had no shortness of breath or chest pain (Tr. 22, 249-51);

- In March 2011, Plaintiff had no active symptoms during a follow-up at the Mercy Clinic, and was instructed to continue on the same medications (Tr. 22-23, 287-88); and

- The state agency physicians opined that Plaintiff could perform a limited range of light work with some postural limitations (Tr. 23, 164-71, 172).

Based upon the medical evidence, the ALJ correctly determined the proper limitations in the RFC assessment. The ALJ also correctly concluded that, although Plaintiff had some cardiac impairments and kidney disease, these diagnoses alone do not establish that her impairments were disabling. *Id.*

The ALJ presented Plaintiff's substantial limitations in a hypothetical question to the vocational expert, who testified that there were jobs than an individual with Plaintiff's limitations could perform (Tr. 59-64). The vocational expert also identified jobs at the

11

sedentary level that an individual with Plaintiff's limitations could perform (Tr. 62-64). Hence, the undersigned concludes that the ALJ's decision that Plaintiff was not disabled because she could perform other work in the national economy is supported by substantial evidence (Tr. 24-25).

In determining that Plaintiff could perform light work, the ALJ correctly evaluated the credibility of Plaintiff's subjective complaints. It is the ALJ's responsibility to determine the extent to which a claimant is accurately stating her functional limitations. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Because an ALJ is charged with observing a witness' demeanor, her findings on credibility must be accorded great weight and deference. *Walters,* 127 F.3d at 531. However valid a claimant's complaints may appear, the regulations require objective clinical signs and laboratory findings that demonstrate the existence of a medically-determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. Section 404.1529(b). The regulations then require the Commissioner to evaluate their intensity and persistence and their effect on the claimant's ability to work in light of the entire record. 20 C.F.R. Section 404.1529(c)(1)-(3).

The ALJ correctly determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible (Tr. 23-24). Based upon the evidence, the ALJ found that, despite her impairments, Plaintiff had serious non-compliance issues with medical treatment and advice (Tr. 23-24). An individual's statements may be less credible if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. SSR

12

96-7p, 1996 WL 374186. The evidence shows that Plaintiff was non-compliant with recommended diet modifications and exercise for her diabetes and blood pressure (Tr. 23, 150, 154, 158, 175-76, 181, 187, 196, 251, 262, 264, 275, 285, 287). She was also non-compliant with checking and monitoring her blood sugar levels and blood pressure (Tr. 23-24, 152, 158, 255-56, 262, 264, 275, 277), preventing her doctors from being able to properly adjust her medication, and admitted that she did not really watch what she ate (Tr. 23, 42, 264). Plaintiff failed to keep an appointment with a dietician (Tr. 23, 183, 264) and treating doctors (Tr. 24, 152, 153, 180, 255, 285). She failed to obtain prescribed blood work (Tr. 24, 152), or "forgot" to do so (Tr. 287). Plaintiff failed to stop smoking, despite the instruction to do so from several medical providers (Tr. 24, 157, 180-81, 182-83, 184, 187, 190, 196, 201, 250, 259). She continued to eat "a lot" of bananas, because she "loves eating them frequently," despite repeated instructions to eat a low-potassium diet (Tr. 24, 153, 154, 158, 182-83, 276, 282).

Nevertheless, despite Plaintiff's non-compliance with recommended treatment, Plaintiff frequently stated that she was feeling well. In June 2007, Plaintiff was "doing very well" with "absolutely no complaints" and no symptoms (Tr. 280, 282); in July 2007, Plaintiff denied symptoms, and stated that she was feeling "pretty good" (Tr. 276); in October 2007, she had no complaints apart from leg swelling due to new medication (Tr. 274); later that month, she was "overall doing well with no specific complaints" (Tr. 182); in January 2008, after having a stent placed in her right coronary artery, Plaintiff reported feeling "much better," and had no chest pain (Tr. 157, 202); in February 2008, Plaintiff reported feeling

"much better than she ha[d] felt in years" (Tr. 272); in August 2008, Plaintiff stated that she "feels she is doing great" (Tr. 152); in November 2008, Plaintiff reported being "in good health and feeling very good" (Tr. 150); in June 2009, Plaintiff was doing "fairly okay," with "no complaints"(Tr. 262). In August 2009, Dr. Bhargava noted he "was not sure what prompted [Plaintiff] to come in today," because he stated that she "feels well" (Tr. 180); in December 2009, April 2010, and August 2010, Plaintiff's sole complaint was trouble sleeping (Tr. 249, 255, 285), although she admitted that she did not follow proper sleep hygiene, and that, when she did follow it, she slept well (Tr. 249); and, in March 2011, Plaintiff reported no active symptoms or insomnia (Tr. 287).

Plaintiff challenges the ALJ's decision that she found that Plaintiff had not pursued all available health care options in light of her statement that she was unable to afford treatment or insurance, and that the ALJ found that Plaintiff smoked one to two packs of cigarettes per day, despite Plaintiff's testimony that she smoked only a half pack of cigarettes per day (Pl.'s Br. at 7). Neither of these contentions undermine the ALJ's decision. Hence, the undersigned finds that substantial evidence supports the ALJ's findings. The Sixth Circuit recognizes that an inability to pay for medical services may result in less than optimum documentation of a Plaintiff's condition, but the ALJ and the reviewing court must work with the medical record presented to them. *Gooch v. Secretary of Health and Human Services,* 833 F.2d 589, 592 (6th Cir. 1987). In this case, based upon the record, the ALJ had sufficient evidence before her to decide Plaintiff's claims. In any event, the ALJ did not solely rely upon Plaintiff's non-compliance with treatment in evaluating Plaintiff's credibility.

In addition, the ALJ's statement that she smoked one to two packs per day is supported by the treatment note in the record, stating that Plaintiff had smoked that many cigarettes for twenty-five years (Tr. 250). Regardless of the exact number of cigarettes that Plaintiff smoked per day, the fact remains that she continued to smoke, despite repeated instructions to quit. Hence, the ALJ correctly noted this fact as undermining Plaintiff's credibility.

In this case, the ALJ accounted for Plaintiff's impairments by limiting her to a reduced range of light work (Tr. 21). Therefore, the undersigned finds that substantial evidence supports the ALJ's decision. Finally, Plaintiff has failed to identify any other specific functional limitation resulting from her impairments that was not used in the RFC assessment.

The undersigned finds that substantial evidence supports the ALJ's evaluation of the record, and, therefore, the Court affirms the ALJ's decision that Plaintiff was not disabled.

## VIII. CONCLUSION.

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff has the residual functional capacity (RFC) to perform restricted light work, and, therefore, was not disabled. Hence, she is not entitled to DIB.

Dated: January 8, 2013 */s/George J. Limbert*
**GEORGE J. LIMBERT**
**UNITED STATES MAGISTRATE JUDGE**